UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEITH L. WILLIAMS,

    Petitioner,

v.

JAMES STIGLIANO, et al.,

    Respondent.

Civ. No. 22-6028 (RK)

OPINION

**KIRSCH, District Judge**

## I. INTRODUCTION

Petitioner, Keith L. Williams ("Petitioner" or "Williams"), is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* ECF No. 1. Respondents have filed a motion to dismiss the habeas petition due to untimeliness. *See* ECF No. 18. Petitioner did not file a response to Respondents' motion to dismiss. For the following reasons, Respondents' motion to dismiss the habeas petition due to untimeliness is granted. The habeas petition will be dismissed and a certificate of appealability shall not issue.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In May 2008, Arrel Bell was found deceased in a park in Trenton, New Jersey. *See State v. Williams*, No. A-6176-12T4, 2016 WL 3245390, at *1 (N.J. Sup. Ct. App. Div. June 14, 2016). Bell had been shot twice in the back of his head at close range. *See id.* Petitioner was charged with first-degree conspiracy to murder Bell. *See id.* The factual background giving rise to Petitioner's criminal conviction is recited by the New Jersey Superior Court, Appellate Division during Petitioner's direct appeal as follows:

> After Bell's body was found, law enforcement conducted a series of investigations. Police learned that Bell had been a high school

friend of [Karim] Sampson. In May 2007, Bell and Sampson had been arrested for two armed robberies. Bell had implicated Sampson in the robberies in statements he gave to the police. Through interviews of other witnesses, law enforcement also came to believe that Sampson and several other Bloods gang members were with Bell just before he was shot.

During the investigation, law enforcement personnel were shown a social network website called MySpace where several of those individuals had public pages. Those pages led the police to believe that defendant, together with at least three other Bloods gang members, had communicated about the conspiracy to murder Bell through MySpace. Based on that information, the police obtained a series of warrants. Among the warrants obtained by the police, was a warrant for the search of Sampson's residence. In the course of executing that warrant, the police seized a computer from Sampson's room.

Later, the police also obtained a warrant to search defendant's residence. During that search, police seized a computer, 9mm bullets, and several letters defendant had addressed to Sampson. After defendant's home was searched, defendant was taken into custody and interviewed. During that interview, defendant made certain statements which the State alleged implicated him in the conspiracy to murder Bell. Specifically, the State alleged that defendant admitted that for a gang member to discipline or murder another gang member, he had to first authorize it. The interview was video and audio recorded and substantial portions of defendant's statements were presented to the jury.

Police also obtained a warrant directing MySpace to turn over the contents of the MySpace pages of defendant and Sampson, as well as other persons. A number of MySpace messages (also referred to as emails) between defendant, Sampson and other co-conspirators were presented to the jury. The State also presented an expert witness who explained to the jury various gang slang and abbreviations used in the messages.

The police also obtained a separate warrant that allowed them to search the information contained on Sampson's and defendant's computers. That information included MySpace messages that had been exchanged between defendant and Sampson, as well as messages sent and received from other alleged conspirators.

Pre-trial, defendant moved to suppress certain evidence seized by police pursuant to the warrants. Specifically, defendant joined with

2

co-defendant Sampson in a motion to suppress the seizure of the computer from Sampson's residence. Defendant also joined with Sampson in a motion to bar the admission of the MySpace messages. The motion judge heard oral argument on the motion to suppress the seizure of Sampson's computer and denied that motion. The judge found that there was probable cause for the issuance of the warrant to search Sampson's residence and the computer fell within the scope of the items authorized to be seized by the warrant.

An *N.J.R.E.* 104 hearing was conducted on the admissibility of the MySpace messages. After hearing four days of testimony from three witnesses, and after reviewing the MySpace messages, the motion judge found that those messages were authentic and admissible. Specifically, the judge found that there were sufficient indicia of reliability that defendant and his co-conspirators sent and received the messages. In making that reliability determination, the motion judge relied on the testimony provided by a MySpace records custodian and a Verizon consultant.

Defendant also moved pre-trial to preclude the State from admitting evidence of defendant's gang affiliation and expert testimony regarding gang terminology used in the MySpace messages. The trial judge conducted an *N.J.R.E.* 104 hearing to address the admissibility of the State's proposed gang expert and he heard oral argument concerning the admissibility of the evidence of defendant's alleged gang affiliation. The judge then issued a written opinion finding that (1) the State's expert was qualified to provide testimony concerning "gang intelligence and gang language"; and (2) the evidence of defendant's alleged gang affiliation was admissible under *N.J.R.E.* 404(b) as evidence to prove the motive for the conspiracy to commit Bell's murder.

Relying on our opinion in *State v. Goodman,* 415 *N.J. Super.* 210 (App. Div. 2010), *certif. denied,* 205 *N.J.* 78 (2011), the trial judge ruled that the State's gang expert could testify about unfamiliar gang terminology and abbreviations. The trial judge went on to rule, however, that such testimony would be limited. Specifically, the trial judge prohibited the expert from (1) providing any interpretation of terminology that an average juror could understand; (2) opining that the messages are "gang-related"; or (3) providing an opinion of what he was interpreting; that is, prohibiting the expert from testifying about the ultimate meaning of the MySpace messages. The trial judge also ruled that certain MySpace messages were not admissible under *N.J.R.E.* 403.

3

> In making the ruling concerning *N.J.R.E.* 404(b) and evidence of defendant's gang affiliation, the trial judge analyzed the factors identified in *State v. Cofield,* 127 *N.J.* 328 (1992), and as analyzed in *Goodman, supra,* 415 *N.J. Super.* at 229–30. Specifically, the trial court found that the gang-affiliated evidence was relevant, reliable and more probative than prejudicial. The court then sanitized the proposed evidence and limited the evidence of defendant's gang affiliation to the evidence necessary to prove the alleged motive.
>
> After the motions were denied, Sampson pled guilty to first-degree conspiracy to commit murder. The trial court also granted motions to sever the trials of the other co-defendants and defendant then was tried by himself.
>
> At defendant's trial, the State called a number of witnesses to introduce and present to the jury certain messages exchanged by defendant and Sampson through MySpace. The State also introduced approximately five hours of statements defendant gave to the police and argued to the jury that defendant's statements implicated him in the conspiracy to murder Bell.
>
> The defense disputed much of the State's evidence, including challenging through cross-examination, interpretations offered by the State's expert witness on gangs. The defense also argued that defendant had "backed out" of the conspiracy to murder Bell.
>
> After hearing all of the evidence and summations of counsel, the jury found defendant guilty of first-degree conspiracy to commit murder.

*Williams*, 2016 WL 3245390, at *1–3. Petitioner received a sentence of twenty years imprisonment with an eighty-five percent parole ineligibility period. *See id.* at *1.

Petitioner appealed his judgment of conviction to the New Jersey Superior Court, Appellate Division. *See* ECF No. 18-13. The Appellate Division affirmed the judgment of conviction on June 14, 2016. *See Williams*, 2016 WL 3245390. Petitioner then filed a petition for certification with the New Jersey Supreme Court. The New Jersey Supreme Court denied certification on December 2, 2016. *See State v. Williams*, 157 A.3d 830 (N.J. 2016).

4

On February 6, 2017, Petitioner filed a post-conviction relief ("PCR") petition in the New Jersey Superior Court. *See* ECF No. 18-16. Ultimately, the New Jersey Superior Court denied Petitioner's PCR petition in a written opinion and order on January 28, 2019. *See* ECF No. 18-17 & 18-18. Petitioner then appealed that denial to the New Jersey Superior Court, Appellate Division. *See* ECF No. 18-19. On July 16, 2020, the Appellate Division affirmed the denial of Petitioner's PCR petition. *See State v. Williams*, No. A-3168-18T2, 2020 WL 4012777 (N.J. Sup. Ct. App. Div. 2020). Petitioner then filed a petition for certification with the New Jersey Supreme Court. *See* ECF No. 18-21 & 18-22. In an order entered November 20, 2020,[1] the New Jersey Supreme Court denied certification. *See State v. Williams*, 241 A.3d 572 (N.J. 2020).

Petitioner then filed a federal habeas petition that is dated October 4, 2022. *See* ECF No. 1 at 22. Petitioner raises a plethora of claims in his habeas petition. Ultimately, on October 24, 2023, Respondents filed a motion to dismiss the habeas petition due to untimeliness. *See* ECF 18. Mail sent to Petitioner by the Court was returned as undeliverable. *See* ECF No. 21. However, Respondents subsequently filed a certification on November 8, 2023 that they served their motion to dismiss on Petitioner at his correct address. *See* ECF No. 22. To date, Petitioner has not filed a response to Respondents' motion to dismiss.

### III. DISCUSSION

Respondents argue that the habeas petition should be dismissed because it is untimely. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). That limitations

---

[1] Petitioner states in his habeas petition that this order was not filed until November 21, 2021. *See* ECF No. 1 at 21. The record though contradicts this statement by Petitioner. *See State v. Williams*, 241 A.3d 572 (N.J. 2020).

period begins to run when the criminal judgment becomes "final."[2] A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) at the conclusion of direct review or at the expiration of time for seeking such review. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000); *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999); *see also* 28 U.S.C. § 2244(d)(1)(A) (the 1-year period begins on 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review'). When a defendant does not file a petition for certiorari with the United States Supreme Court, the one-year limitations period starts to run when the ninety-day period for seeking certiorari expires. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *Clay v. U.S.*, 537 U.S. 522, 532 (2003); *Morris*, 187 F.3d at 337 n.1 (holding that the period of direct review "include[s] the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court").

---

[2] The statute states in full that the limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence ....

28 U.S.C. § 2244(d)(1). There is no indication that any subsection other than (A) is applicable here.

The New Jersey Supreme Court denied certification on Petitioner's direct appeal on December 2, 2016. As Petitioner did not seek certiorari from the United States Supreme Court, his judgment became final ninety days thereafter.

As previously indicated, however, Petitioner filed his PCR petition within that ninety-day window on February 6, 2017. The filing of a PCR petition may statutorily toll (*i.e.*, suspend) the running of the one-year habeas limitations period. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). A prisoner's application for state collateral review is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[.]" *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 85 (3d Cir. 2013) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)).

There is nothing to indicate that Petitioner's PCR petition was anything but properly filed. Thus, the one-year statute of limitations was statutorily tolled until Petitioner's PCR proceedings concluded on November 20, 2020, when the New Jersey Supreme Court denied certification. The record does not indicate that Petitioner filed a petition for writ of certiorari with the United States Supreme Court. Unlike Petitioner's direct appeal proceedings, the one-year statute of limitations is not tolled during the ninety-day period he could have filed a petition for writ of certiorari on the denial of his PCR petition. *See Stokes v. District Attorney of Cnty. of Phila.*, 247 F.3d 539, 542 (3d Cir. 2001) (citations omitted). Thus, Petitioner's applicable one-year statute of limitations began to run on November 21, 2020, after the New Jersey Supreme Court denied certification on the denial of Petitioner's PCR petition. Thus, Petitioner's federal habeas petition was due to be filed one year later in November 2021.

This Court applies the prisoner mailbox rule to determine when petitioner is deemed to have filed this federal habeas petition. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988). Applying that rule, Petitioner is deemed to have filed his federal habeas petition on October 4, 2022. *See* ECF No. 1 at 22. Thus, unless equitable tolling applies, Petitioner's federal habeas petition is untimely by slightly over ten months.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Jenkins*, 705 F.3d at 89. "There are no bright lines in determining whether equitable tolling is warranted in a given case." *See Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). The Third Circuit has explained that "equitable tolling is appropriate when principles of equity would make rigid application of a limitation period unfair, but that a court should be sparing in its use of the doctrine." *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (citing *Pabon*, 654 F.3d at 399; *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)).

As noted above, Petitioner never filed a response to Respondents' motion to dismiss the habeas petition due to untimeliness. There has therefore been no showing by Petitioner that equitable tolling should apply to any portion of the period between November 21, 2020, when his one-year statute of limitations began to run, and when he ultimately filed his federal habeas petition on October 4, 2022. Accordingly, Petitioner's habeas petition is untimely such that Respondents' motion to dismiss will be granted.

### IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §

2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when . . . jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, a certificate of appealability shall not issue as jurists of reason would not debate the untimeliness of Petitioner's habeas petition.

## V.    CONCLUSION

For the foregoing reasons, Respondents' motion to dismiss is granted and Petitioner's habeas petition is dismissed due to untimeliness. A certificate of appealability shall not issue. An appropriate order will be entered.

DATED: April 22, 2024

ROBERT KIRSCH
United States District Judge